# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>HARVEER HUNDAL, an individual resident and citizen of California,<br><br>Defendant. | Case No. 1:17-cv-01363-DAD-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. No. 12) |

On February 14, 2018, Plaintiff BMO Harris Bank N.A. ("Plaintiff") filed a motion for default judgment against Defendant Harveer Hundal ("Defendant"). Doc. No. 12. No opposition was filed, even though the motion was served on the Defendants at the addresses where the Defendants were served. (See Doc. No. 15.)

The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for March 16, 2018.

Having considered the moving papers and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED.[1]

---

1. The Court has not been notified that any party has filed bankruptcy. No notice of filing of bankruptcy has been filed with this Court. See Local Rule 159 ("If the filing party has not filed the required Notice and

# I. BACKGROUND[2]

## A. Loan 7776475001

On August 15, 2013, Defendant executed and entered into a Loan and Security Agreement (the "7776475001 Agreement") in favor of GE Capital Corporation ("GECC"), pursuant to which GECC agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay GECC $150,927.48. Doc. 1, Ex. A. Under the 7776475001 Agreement, Defendant granted GECC a security interest in collateral described as: a 2014 Vanguard Refrigerated Van, VIN# LJRR53261E6003594 and a 2014 Vanguard Refrigerated Van, VIN# LJRR5326XE6003593 (collectively the "7776475001 Collateral"). 11. GECC perfected its security interest in the 7776475001 Collateral by filing its liens against the titles of the 7776475001 Collateral with the California Department of Revenue. Doc. 1-2, Ex. B.

GECC advanced funds for the acquisition of the 7776475001 Collateral.

Effective December 1, 2015, GECC transferred and assigned to Plaintiff all of its rights, titles, and interests in and to the 7776475001 account with Defendant, including without limitation, the 7776475001 Agreement and GECC's security interest in the 7776475001 Collateral. Doc. 1-2, Ex. C.

On March 24, 2017, Plaintiff and Defendant entered into Modification Agreement which is incorporated into the original 7776475001 Agreement. Doc. 1-2, Ex. D.

## B. Loan 7960883001

On June 9, 2015, Defendant executed and entered into a Loan and Security Agreement (the "7960883001 Agreement") in favor of GECC, pursuant to which GECC agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay GECC $88,881.00. Doc. 1, Ex. E. Under the 7960883001 Agreement, Defendant granted GECC a security interest in collateral described as: 2016 Great Dane Refrigerated Trailer, VIN# 1GRAA0628GB707135 (the "7960883001 Collateral"). GECC perfected its security interest in the 7960883001 Collateral by filing its liens against the title of the 7960883001 Collateral with

---

another party learns of the bankruptcy filing, that party must file the Notice within seven (7) days of learning of the bankruptcy filing.")

[2] Background facts are derived from the allegations in the complaint filed on October 11, 2017. Doc. 1.

the California Department of Revenue. Doc. 1-2, Ex. F

GECC advanced funds for the acquisition of the 7960883001 Collateral.

Effective October 1, 2015, GECC transferred and assigned to Transportation Truck and Trailer Solutions, LLC ("TTTS") all of its rights, titles, and interests in the 7960883001 account with Defendant, including without limitation, the 7960883001 Agreement and GECC's security interest in the 7960883001 Collateral. Doc. 1-2, Ex. G. Effective December 1, 2015, TTTS transferred and assigned to Plaintiff all of its rights, titles, and interests in the 7960883001 account with Defendant, including without limitation, the 7960883001 Agreement and TTTS' security interest in the 7960883001 Collateral. Doc. 1-2, Ex. H.

On March 24, 2017, Plaintiff and Defendant entered into a Modification Agreement which is incorporated into the original 7960883001 Agreement. Doc. 1-2, Ex. I.

**C. Loan 7962916001**

On June 25, 2015, Defendant executed and entered into a Loan and Security Agreement (the "7962916001 Agreement") in favor of GE Capital Commercial, Inc. ("GE Capital"), pursuant to which GE Capital agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay GECC $90,853.20. Doc. 1-2, Ex. J. Under this agreement, Defendant granted GE Capital a security interest in certain collateral to be acquired by Defendant, specifically described as: a 2016 Vanguard Refrigerated Trailer, VIN# 527SR5324GL006295 (the "7962916001 Collateral"). GE Capital perfected its security interest in the 7962916001 Collateral by filing its liens against the title of the 7962916001 Collateral with the California Department of Revenue. Doc. 1-2, Ex. K.

GE Capital advanced funds for the acquisition of the 7962916001 Collateral.

Effective October 1, 2015, GE Capital transferred and assigned to Plaintiff all of its rights, titles, and interests in and to the 7962916001 account with Defendant, including without limitation, the 7962916001Agreement and GE Capital's security interest in the 7962916001 Collateral. Doc. 1-2, Ex. L.

On or about March 24, 2017, Plaintiff and Defendant entered into a Modification Agreement which is specifically incorporated into the original 7962916001 Agreement. Doc. 1-

2, Ex. M.

**D. Loan 7974966001**

On October 26, 2015, Defendant executed and entered into a Loan and Security Agreement (the "7974966001 Agreement") in favor of TTTS, pursuant to which TTTS agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay TTTS $94,177.38. Doc. 1-2, Ex. N. Under the 7974966001 Agreement, Defendant granted TTTS a security interest in certain collateral to be acquired by Defendant, specifically described as: a 2016 Great Dane Refrigerated Trailer, VIN# 1GRAA0621GW700990 (the "7974966001 Collateral"). TTTS perfected its security interest in the 7974966001 Collateral by filing its liens against the title of the 7974966001 Collateral with the California Department of Revenue. Doc. 1-2, Ex. O.

TTTS advanced funds for the acquisition of the 7974966001Collateral.

Effective December 1, 2015, TTTS transferred and assigned to Plaintiff all of its rights, titles, and interests in and to the 7974966001 account with Defendant, including without limitation, the 7974966001 Agreement and TTTS's security interest in the 7974966001 Collateral. Doc. 1-2, Ex. H.

On March 24, 2017, Plaintiff and Defendant entered into a Modification Agreement which is specifically incorporated into the original 7974966001 Agreement. Doc. 1-2, Ex. P.

**E. Loan 7957930002**

On May 7, 2015, Defendant executed and entered into a Loan and Security Agreement (the "7957930002 Agreement") in favor of GECC, pursuant to which GECC agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay GECC $173,411.40. Doc. 1-2, Ex. Q. Under the 7957930002 Agreement, Defendant granted GECC a security interest in certain collateral to be acquired by Defendant, specifically described as: a 2016 Volvo Tractor, VIN# 4V4NC9EH7GN949952 (the "7957930002 Collateral"). GECC perfected its security interest in the 7957930002 Collateral by filing its liens against the title of the 7957930002 Collateral with the California Department of Revenue. Doc. 1-2, Ex. R.

GECC advanced funds for the acquisition of the 7957930002 Collateral.

Effective October 1, 2015, GECC transferred and assigned to TTTS all of its rights, titles,

and interests in and to the 7957930002 account with Defendant, including without limitation, the 7957930002 Agreement and GECC's security interest in the 7957930002 Collateral. Doc. 1-2, Ex. G.

Effective December 1, 2015, TTTS transferred and assigned to Plaintiff all of its rights, titles, and interests in and to the 7957930002 account with Defendant, including without limitation, the 7957930002 Agreement and TTTS' security interest in the 7957930002 Collateral. Doc. 1-2, Ex. H.

On March 24, 2017, Plaintiff and Defendant entered into a Modification Agreement which is specifically incorporated into the original 7957930002 Agreement. Doc. 1-2, Ex. S.

**F. Loan 7960883003**

On July 10, 2015, Defendant executed and entered into a Loan and Security Agreement (the "7960883003 Agreement") in favor of GECC, pursuant to which GECC agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay GECC $174,622.20. Doc. 1-2, Ex. T. Under the 7960883003 Agreement, Defendant granted GECC a security interest in certain collateral to be acquired by Defendant, specifically described as: a 2016 Volvo Tractor, VIN# 4V4NC9EH7GN947585 (the "7960883003 Collateral"). GECC perfected its security interest in the 7960883003 Collateral by filing its liens against the title of the 7960883003 Collateral with the California Department of Revenue. Doc. 1-2, Ex. U.

GECC advanced funds for the acquisition of the 7960883003 Collateral.

Effective October 1, 2015, GECC transferred and assigned to TTTS all of its rights, titles, and interests in and to the 7960883003 account with Defendant, including without limitation, the 7960883003Agreement and GECC's security interest in the 7960883003 Collateral. Doc. 1-2, Ex. G.

Effective December 1, 2015, TTTS transferred and assigned to Plaintiff all of its rights, titles, and interests in and to the 7960883003 account with Defendant, including without limitation, the 7960883003 Agreement and TTTS' security interest in the 7960883003 Collateral. Doc. 1-2, Ex. H.

On March 24, 2017, Plaintiff and Defendant entered into a Modification Agreement which

is specifically incorporated into the original 7960883003 Agreement. Doc. 1-2, Ex. V.

**G. Loan 7974610001**

On or about July 10, 2015, Defendant executed and entered into a Loan and Security Agreement (the "7974610001 Agreement") in favor of TTTS, pursuant to which TTTS agreed to finance Defendant's purchase of certain vehicle equipment and Defendant agreed to pay TTTS $346,179.00. Doc. 1-2, Ex. W. Under the 7974610001 Agreement, Defendant granted TTTS a security interest in certain collateral to be acquired by Defendant, specifically described as: 2016 Volvo Tractor, VIN# 4V4NC9EH7GN961020 and 2016 Volvo Tractor, VIN# 4V4NC9EH8GN961026 (collectively the "7960883003 Collateral"). TTTS perfected its security interest in the 7974610001 Collateral by filing its liens against the title of the 7974610001 Collateral with the California Department of Revenue. Doc. 1-2, Ex. X.

TTTS advanced funds for the acquisition of the 7974610001 Collateral.

Effective December 1, 2015, TTTS transferred and assigned to Plaintiff all of its rights, titles, and interests in and to the 7960883003 account with Defendant, including without limitation, the 7960883003 Agreement and TTTS' security interest in the 7960883003 Collateral. Doc. 1-2, Ex. H.

On or about March 24, 2017, Plaintiff and Defendant entered into a Modification Agreement which is specifically incorporated into the original 7960883003 Agreement. Doc. 1-2, Ex. Y.

Defendant is in default under the above-reference Loan and Security Agreements (hereinafter "Agreements") for his failure to pay the amounts due thereunder. Doc. 1, Compl. at ¶¶ 55-56. Pursuant to the Agreements, the entire amounts due have been accelerated. As of the respective dates of default, the principal amount due and owing after acceleration totals not less than $684,250.14. Compl. at ¶ 58. Under the Agreements, Defendant is obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law. Id. at ¶ 59. Calculated from the respective dates of default to August 28, 2017, the amount of accrued and unpaid interest due and owing under the

Agreements is an amount not less than $29,391.67. Id. at ¶ 60. Under the Agreements, Defendant is obligated to pay late charges and other fees due under the Agreements. Id. at ¶ 61. As of the respective dates of default, late charges in the amount of $3,953.83 have accrued, which amount remains due and owing. Id. at ¶ 62. Calculated as of August 28, 2017, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $684,250.14. Id. at ¶ 64.

By a letter dated September 5, 2017, Plaintiff notified Defendant of his respective defaults under the Agreements and the consequential acceleration of the loans as authorized by the Agreements. In addition, Plaintiff demanded that Defendant pay the amounts due under the respective Agreements. Id. at ¶ 65; Doc. 1-2, Ex. Z. Despite demand, Defendant has failed and refused to pay the amounts due and owing under the respective Agreements. Compl. at ¶ 66.

As of September 16, 2017, the following collateral vehicles remains in Defendant's possession or control:

    2014 Vanguard Refrigerated Van Trailer
    2014 Vanguard Refrigerated Van Trailer
    2016 Great Dane Refrigerated Van Trailer
    2016 Vanguard Refrigerated Van Trailer
    2016 Great Dane Refrigerated Van Trailer
    2016 Volvo VNL Series Tractor
    2016 Volvo VNL Series Tractor
    2016 Volvo VNL Series Tractor
    2016 Volvo VNL Series Tractor

Id. at ¶ 69.

Plaintiff filed this lawsuit on October 11, 2017, asserting causes of action for injunctive relief, specific performance, claim and delivery, along with breach of contract against Defendant. Plaintiff served Defendant by substituted service at his dwelling house or usual place of abode by leaving a copy of the summons and complaint with his wife, Sophia Noreen, on February 6, 2017. Doc. No. 6. Defendant did not respond to the complaint, and on January 5, 2018, Plaintiff filed a request for entry of default. Doc. No. 9. On the same day, the Clerk of the Court entered default against Defendant. Doc. No. 10. Thereafter, on February 14, 2018, Plaintiff filed the instant motion for default judgment. Doc. No. 12. Plaintiff requests default judgment in the amount of $735,900.09, plus post-judgment interest less any net proceeds received from the liquidation of

the collateral vehicles. Additionally, Plaintiff seeks an award of $7,000.00 in attorneys' fees and expenses incurred in enforcing the agreements and collection of the amounts owed. Plaintiff also seeks immediate possession of the collateral vehicles.

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002)

## III. DISCUSSION

### A. Service of Process

Plaintiff is suing an individual in this action, Defendant Harveer Hundal. Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. Pursuant to Rule 4(e)(2), an individual may be served by delivering a copy of the summons and of the complaint to the individual personally or by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(A), (B). According to the proof of service on file, Defendant was served by leaving a copy of the summons and complaint at his dwelling or usual place of abode with his wife. Doc. No. 6. The Court finds that Defendant was properly served with the summons and complaint.

**B. The Eitel Factors Weigh in Favor of Default Judgment**

As discussed below, the Court finds that the Eitel factors weigh in favor of granting default judgment.

1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted, and this factor weighs in favor of default judgment.

2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint alleges breach of loan agreements and breach of a guarantee. However, neither Plaintiff's application for default judgment nor its complaint provide the relevant legal standard or analysis of these claims. Despite this deficiency, the Court will evaluate the merits and sufficiency of the complaint.

The loan agreements at issue provide that they will be subject to the laws of the state of Texas. Doc. No. 1-2, Ex. A ¶ 7.6; Ex. E ¶ 7.6; Ex. J ¶ 7.6; Ex. N ¶ 7.6, Ex. Q ¶ 7.6; Ex. T ¶ 7.6; Ex. W ¶ 7.6. In determining the enforceability of a choice-of-law provision in a diversity action, such as this one, a federal court applies the choice of law rules of the forum state, in this case California. Hatfield v. Halifax PLC, 564 F.3d 1177, 1182 (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction *or any other reasonable basis exists for the parties' choice of law*.'" 1–800–Got Junk? LLC v. Super. Ct., 189 Cal.App.4th 500, 513–14 (2010) (quoting Trust One Mortg. Corp. v. Invest Am. Mortg. Corp., 134 Cal.App.4th 1302, 1308 (2005) (emphasis in original). There is a strong policy in favor of enforcing choice of

1 law provisions. 1–800–Got Junk? LLC, 189 Cal.App.4th at 513.

2 Here, the parties have agreed that the laws of Texas apply to claims arising out of the loan agreements. It is not necessary to decide whether California or Texas's substantive law governs, however, because the Court is aware of no relevant differences between the states' laws governing breach of contract claims. See Petro-Diamond Inc., v. SCB & Assocs., LLC, No. SACV 12-01893-CJC(ANx), 2013 WL 12138724, at *3 n. 4 (C.D. Cal. Sept. 18, 2013) ("The Court need not decide whether California's or Texas's substantive law governs, however, because it is aware of no relevant differences between the states' laws governing breach of contract and civil conspiracy."); see also Paramount Pictures Corp. v. Johnson Broad. Inc., No. CIV.A.H 04 03488, 2006 WL 367874, at *5 n. 6 (S.D. Tex. Feb. 15, 2006) ("The Court need not decide whether California's or Texas's substantive law applies, however, since the law governing breach of contract claims is the same for both states.").

In order to establish a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. Id. at *5 (citing Reichert v. Gen. Ins. Co. of Am., 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377, 381 (Cal. 1968) and Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App. 2005)).

With respect to the breach of guaranty claims, under California law, the elements for a breach of guaranty claim generally are the same as the elements of a breach of contract claim. See Alwood v. Montecalvo, No. CV 14-08139 MMM (PJWx), 2015 WL 13306204, at *6 (C.D. Cal. Nov. 3, 2015). Under Texas law, to prevail on a claim for breach of a guaranty, Plaintiff must establish (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract secured by the guaranty; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. CSFB1998-C2 TX Facilities, LLC v. Rector, No. 3:14-CV-4142-M, 2016 WL 631923, at *2 (N.D. Tex. Feb. 16, 2016).

The Court finds that Plaintiff's complaint sufficiently states claims for breach of the loan agreements, which weighs in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp.2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff seeks judgment in the amount of $735,900.09 against Defendant, plus post-judgment interest which may accrue, less any net proceeds received from the liquidation of any collateral vehicles, along with $7,000.00 in attorneys' fees and costs incurred by Plaintiff in prosecuting this action. Doc. 12 at 5. The Court finds that although the amount at stake is significant, it is proportional to the harm caused by Defendant's failure to repay the loan amounts and, therefore, this factor does not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiff has provided the Court with well-pled allegations and a declaration with exhibits in support. Here, the Court may assume the truth of well-pled facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendant's failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. See, e.g., Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F.Supp.2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. According to the Court's docket, Plaintiff properly served

Defendant Harveer Hundal. Doc. No. 6. Moreover, Plaintiff served Defendant with a copy of the request for entry of default and the motion for default judgment. Doc. Nos. 9 and 15. Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendant has not appeared to date. Thus, the record suggests that he has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants has not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the Eitel factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendant. The Court therefore will recommend that Plaintiff's Motion for Default Judgment be granted.

## IV. Requested Relief

### A. Damages

The loan agreements at issue all provide that in the event of default, all indebtedness becomes immediately due and payable, Plaintiff is entitled to take possession of and dispose of the equipment and to have the borrower pay all interest and expenses incurred, including reasonable attorneys' fees. Doc. No. 1-2, Ex. A ¶¶ 5.1-5.3; Ex. E ¶¶ 5.1-5.3; Ex. J ¶¶ 5.1-5.3; Ex. N ¶¶ 5.1-5.3, Ex. Q ¶ ¶¶ 5.1-5.3; Ex. T ¶ ¶¶ 5.1-5.3; Ex. W ¶¶ 5.1-5.3. As of the respective dates of default on the various agreements, Plaintiff declares that the principal amount due and owing after acceleration totals $684,250.14. Doc. 12-1, Affidavit in Support of Motion for Default Judgment at ¶ 50. Calculated from the respective dates of default to February 1, 2018, the amount

of accrued and unpaid interest due and owing under the Agreements is an amount not less than $53,899.18. Id. at ¶ 52. As of the respective dates of default, late charges in the amount of $2,775.64 have accrued. Id. at ¶ 54. Calculated as of February 1, 2018, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $735,900.09. Id. at ¶ 56.

These requested amounts are supported by an affidavit. Doc. 12-1, Ex. A. The agreements and affidavit constitute sufficient proof that Plaintiff has sustained damages for the breaches of the Agreements. Based on breach of the Agreements, Plaintiff seeks judgment in the amount of $735,900.09, plus post-judgment interest and attorneys' fees and costs, against Defendant Harveer Hundal. Doc. 12 at ¶ 15.

**B.  Attorneys' Fees**

Plaintiff seeks a total amount of $7,000.00 in attorneys' fees and costs. Doc. 12-1, Ex. B. "California and Texas both enforce contractual provisions allowing the collection of reasonable attorneys' fees. Cal. Civ. Proc. Code § 1021; Gil v. Mansano, 121 Cal.App.4th 739, 742-43 (2004); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (allowing prevailing party in a breach of contract action to collect attorneys' fees as a default rule); Intercontinental Grp. P'ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 653 (Tex. 2009) (finding that parties may specifically contract for a broader or narrower attorney's fees provision than the default rule laid out by statute). The Court therefore finds that Plaintiff is entitled to reasonable attorneys' fees.

To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). The relevant community here is the Fresno Division of the Eastern District of California.

In the Fresno Division of the Eastern District of California, attorneys with twenty or more

years of experience are awarded $350.00 to $400.00 per hour. See, e.g. Leprino Foods Co. v. JND Thomas Co., Inc., No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), report and recommendation adopted in part, No. 1:16-cv-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney with more than thirty years of experience); Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); Willis v. City of Fresno, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) adhered to on reconsideration, No. 1:09-CV-01766-BAM, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour). Generally, "$300 is the upper range for competent attorneys with approximately a decade of experience." Barkett v. Sentosa Props. LLC, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing Silvester v. Harris, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014). For attorneys with "less than ten years of experience ... the accepted range is between $175 and $300 per hour." Silvester, 2014 WL 7239371 at *4 (citing Willis v. City of Fresno, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014); Gordillo v. Ford Motor Co., No. 1:11-cv-01786 MJS, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." Silvester, 2014 WL 7239371, at *4 (citations omitted); cf. Franco v. Ruiz Food Prods., Inc., No. 1:10–cv–02354–SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants).

Here, Plaintiff provides no information regarding rates per hour or hours expended. Despite the deficiency in Plaintiff's moving papers, the Court takes judicial notice of the State Bar of California website, which shows that Mr. Miles, the attorney of record in this action, was admitted to practice in California in 2010, and has approximately 8 years of experience in this state. He also is admitted to practice in Kansas, Missouri and Tennessee. Doc. 12-1, Ex. B at ¶

1. Given this information, the Court finds a rate of $300 per hour to be reasonable for the services of Mr. Miles. With this hourly rate in mind, the amount of $7,000.00 requested by Plaintiff equates with approximately 23 hours in attempting to collect and enforce the Agreements. The Court finds this amount reasonable, and will recommend that attorney fees be awarded in the amount of $7,000.00.

### V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 12) be granted;

2. Default judgment be entered in favor of Plaintiff and against Defendant Harveer Hundal in the amount of $ $735,900.09 plus post-judgment interest, less any net proceeds received from the liquidation of any collateral vehicles recovered;

3. Defendant be ordered to pay Plaintiff an amount of $7,000.00, which represents the reasonable attorneys' fees, expenses and costs incurred in enforcing the Agreements and in collection of the amounts due;

4. Plaintiff be awarded final possession of the collateral vehicles; and

5. Plaintiff be authorized to liquidate any recovered collateral in a commercially reasonable manner.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 6, 2018**         /s/ *Barbara A. McAuliffe*
                                     UNITED STATES MAGISTRATE JUDGE